UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ESTATE OF GEORGE EDWARD YOUNG, et al.,** | Civil Action No. 14-1825 (FLW) |
| **Plaintiff,** | |
| v. | OPINION |
| **GARY LANIGAN, COMMISSIONER, et al.,** | |
| **Defendants.** | |

**WOLFSON, United States District Judge:**

I.      **INTRODUCTION**

This civil rights action is brought by Plaintiffs under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") on behalf of George Edward Young (hereafter "Mr. Young" or "Decedent"), who died of acute respiratory failure after he removed his tracheostomy tube while on suicide watch in the infirmary at New Jersey State Prison ("NJSP").[1] Plaintiffs accuse

---

[1] Although Defendant has not raised the issue, the Court notes that the Amended Complaint is brought by the representative of Mr. Young's estate and Mr. Young's dependents; however, Decedent's representative is the only Plaintiff permitted to bring § 1983 claims on his behalf. In *Robertson v. Wegmann*, 436 U.S. 584 (1978), the Supreme Court held that the question of whether a section 1983 claim survives the death of a plaintiff is governed by the local state's survival statute, so long as that statute is "not inconsistent with the Constitution and laws of the United States." *Id.* at 588–90. New Jersey's Survivor Act, "preserves for the decedent's estate any personal cause of action that decedent would have had if he or she had survived." *Vassiliu v. Daimler Chrysler Corp.*, 178 N.J. 286, 294 (2004) (internal citation and quotations omitted); *see also Alexander v. Whitman*, 114 F.3d 1392, 1398 (3d Cir. 1997)). Under New Jersey's Survivor Act, only the executor or administrator of the decedent's estate may bring an action for violations of a decedent's rights. *See* N.J.S.A. § 2A:15–3 ("Executors and administrators may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser, and recover their damages as their testator or intestate would have had if he was living."). The Court further notes that the one count Amended Complaint alleges violations of Mr. Young's Eighth Amendment rights and does not allege any violations of his Dependents' constitutional rights. The Third Circuit has held that the latter type of claim

1

Defendant Prison Administrator Greg Bartkowski ("Defendant" or "Bartkowski") and other unidentified defendants of failing to monitor and protect the Decedent.  In the instant motion, Defendant Bartkowski has moved to dismiss Plaintiffs' Amended Complaint for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6).  For the reasons stated in the foregoing Opinion, that motion is denied without prejudice at this time.[2]

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### a.  Factual Background

The Amended Complaint alleges that Mr. Young removed his tracheostomy tube in an apparent suicide attempt, and that prison staff (1) failed to monitor him prior to his suicide attempt, (2) had neither the equipment nor the training to reinsert the tube, and (3) delayed in calling for outside emergency medical care.  By way of background, the Amended Complaint alleges that on October 11, 2011, Mr. Young was involved in a violent confrontation with his ex-girlfriend, who stabbed him multiple times in his lungs and torso. (ECF No. 13, Amended Compl. at ¶¶ 22-24.) After the stabbing, Mr. Young was held at Passaic County jail because contact with his ex-girlfriend violated the terms of a restraining Order and triggered a violation

---

may only be brought under section 1983 in very limited circumstances.  *See, e.g.*, *McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003) (rejecting due process claim brought pursuant to section 1983 by father in connection with the fatal police shooting of his adult child and holding that "the fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the companionship of his independent adult child").  Here, because there are no independent claims asserted by Mr. Young's dependents, it does not appear that these Plaintiffs are appropriately named.  However, because such statutory standing issues do not implicate this Court's jurisdiction, Defendant may move to dismiss these Plaintiffs by way of a motion.

[2] Plaintiffs have also requested leave to file an Amended Complaint (1) to correct the name of Decedent's representative, Plaintiff Je' Taime M. Langston, who is incorrectly identified as Je' Taime Lawson, and (2) to substitute the term "tracheostomy tube" for the term "tracheostomy" throughout the Amended Complaint when referring to the medical device relied on by Mr. Young. (ECF No. 18-1, Pl. Br. at 8.)  The Court grants Plaintiffs' request to make these two corrections.

of parole. He experienced medical complications from the stab injuries to his lung and was eventually intubated with the tracheostomy tube. (*Id.*)

For reasons that are not explained in the Amended Complaint, Mr. Young was transferred from Passaic County Jail to New Jersey State Prison. (*Id.* at ¶ 25.) The Amended Complaint alleges that Mr. Young, who had experienced two prior cardiac arrests and resulting brain damage due to his injuries, was housed in the prison infirmary and placed on suicide watch because he had previously tried to remove his tracheostomy tube. (*Id.* at ¶ 26-29.) The Amended Complaint further alleges that Mr. Young was able to remove his tracheostomy tube because he was not properly monitored by prison staff while on suicide watch. (*Id.* at ¶¶ 26-27.)

According to the Amended Complaint, the dislodging of the tracheostomy tube caused Mr. Young to suffer an unwitnessed cardiac arrest. (*Id.* at ¶ 30.) In that regard, the Amended Complaint alleges that prison staff, "had neither the proper equipment nor training to reinsert a tracheostomy [tube]." (*Id.* at ¶ 30.) The Amended Complaint also alleges facts suggesting that prison staff, after failing to reinsert the tube, delayed in calling for outside Emergency Medical Services ("EMS"), and that such actions caused Mr. Young to "languish[ ]for an hour." [3] (*See id.* at ¶¶ 31, 41-42.) According to the Complaint, Mr. Young "was eventually transported the 1.5 miles [sic] distance from the prison to St. Francis Medical Center" and "EMS personnel worked the deceased for approximately four minutes." (*Id.* at ¶ 31.) Mr. Young's cause of death is listed as "acute respiratory failure." (*Id.*)

---

[3] The Amended Complaint relies on the attached Medical Examiner's Report, which states as follows: "Deceased 31 year old black male inmate of NJ State Prison (recent transfer from Passaic County) was brought to St. Francis Medical Center emergency room from correctional facility for an unwitnessed cardiac arrest. Estimated down time was 1 hour. EMS worked on deceased for approximately 4 minutes. He had pulled out his trachea." (*See* ECF No. 13-1, Mercer County Medical Examiner's Report, attached to Amended Compl.)

3

Plaintiffs have sued Greg Bartkowski, the then-Administrator of New Jersey State Prison, as well as John Doe correctional officers, John Doe staff physicians, John Doe staff nurses, and John Doe physician assistants or other medical personnel that monitored and/or treated Mr. Young on March 23, 2012.  Bartkowski, who has brought the instant motion to dismiss, is the only named Defendant in the Amended Complaint.

The Amended Complaint alleges that Bartkowski was the Administrator of NJSP at the time of Mr. Young's death and was at that time "responsible for all operations of the facility, including the provision of adequate medical care to all inmates housed at the prison." (*Id.* at ¶ 11.)  The Amended Complaint further alleges that state and federal law requires Defendant Bartkowski to ensure that prisoners receive adequate medical care and cites to a New Jersey regulation, N.J.A.C. § 10A:16-2, which requires state prison facilities to provide emergency medical treatment to prisoners, including onsite emergency first aid, an on-call physician, and training for those staff likely to be needed or involved in medical emergencies.  (*See* Compl. at ¶¶ 11, 35.)  Pursuant to the regulation, this training includes but is not limited to the following:

> 1. Types of action required for potential emergency situations;
> 2. Signs and symptoms of an emergency;
> 3. Administration of first aid;
> 4. Methods of obtaining emergency care;
> 5. Location of the correctional facility's first aid kits; and
> 6. Procedures for transferring an inmate(s) to appropriate medical facilities or health care providers.

(*Id.* at ¶ 35 (citing N.J.A.C. § 10A:16-2.10).)  The Amended Complaint alleges that Bartkowski was responsible for ensuring that NJSP complied with N.J.A.C. § 10A:16-2.10.  (*Id.* at ¶ 44.)

### b. Procedural History

The Amended Complaint currently before the Court alleges violations of the Eighth Amendment under section 1983 and the NJCRA.[4] The Amended Complaint is significantly pared down from the original Complaint in this action, which was filed on March 23, 2014 (*see* ECF No. 1), and initially assigned to the Honorable Peter J. Sheridan, U.S.D.J.  In addition to Bartkowski and the John Doe Defendants, the original Complaint named Rutgers University Behavioral Correctional Healthcare and Rutgers Behavioral Healthcare ("UBCH") as well as the Commissioner of the New Jersey Department of Corrections, Gary M. Lanigan, and included a number of state law claims for medical malpractice, wrongful death, a survival action, and negligence.  (*See id.*)  UBCH filed an Answer on May 20, 2014, and on July 29, 2014, the parties stipulated to the dismissal with prejudice as to the claims against UBCH.  (ECF Nos. 5, 10-11.)

In the meantime, Defendants Lanigan and Bartkowski moved to dismiss the original Complaint.  (ECF No. 6.)  In granting that motion to dismiss, Judge Sheridan found that all claims against Defendants Lanigan and Bartkowski should be dismissed, and permitted Plaintiffs leave to file an Amended Complaint with respect to the Eighth Amendment claim against Defendant Bartkowski.  (*See* ECF No. 12, Order at ¶ 3 (citing Pls. Br., ECF No. 8-1).)  Notably, the only specific allegations in the original Complaint with respect to Bartkowski were that (1)

---

[4] To the extent Plaintiffs' NJCRA claims mirror their § 1983 claims, those NJCRA claims are addressed in tandem with his federal causes of action. *See Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443–44 (D.N.J. 2011); *see also Chapman v. New Jersey*, Civ. No. 08–4130, 2009 U.S. Dist. LEXIS 75720, at *7, 2009 WL 2634888 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart...."); *Armstrong v. Sherman*, Civ. No. 09–716, 2010 U.S. Dist. LEXIS 55616, at *15, 2010 WL 2483911 (D.N.J. Jun. 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 ...."); *see generally Hedges v. Musco*, 204 F.3d 109, 122 n. 12 (3d Cir. 2000) (concluding that New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment).

he was responsible for overseeing the provision of adequate medical care and that (2) he failed to "adequately supervise subordinates and contract medical personnel." (*See* ECF No. 1, Original Compl. at ¶¶ 12, 42). Plaintiffs filed their Amended Complaint on July 5, 2015. (ECF No. 13.) On September 10, 2015, Defendant Bartkowski filed the instant motion to dismiss the Amended Complaint, and Plaintiffs filed their response on September 21, 2015. (ECF Nos. 17, 18.) Defendant Bartkowski did not file a reply brief. Judge Sheridan recused from the case on October 20, 2015, and the case was reassigned to the undersigned. (ECF No. 19.) The matter is now briefed and ready for disposition.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R .Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a

defendant has acted unlawfully," but does not create what amounts to a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit has required a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Iqbal*, 556 U.S. 678–79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### IV.  ANALYSIS

In the Amended Complaint, Plaintiffs seek to hold Defendant Bartkowski liable in his individual supervisory capacity for Mr. Young's death. At the outset, *respondeat superior* is not a basis for section 1983 liability. As such, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating that section 1983 plaintiff could not maintain claim against individual defendant unless said defendant was personally involved in actions causing the claim); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (explaining that "[a] defendant in a civil rights

action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*").

Because the individual capacity claims against Defendant Bartkowski <u>as pleaded in the original Complaint</u> relied on an impermissible theory of *respondeat superior*, Judge Sheridan dismissed those claims without prejudice, and Plaintiffs were granted leave to file an Amended Complaint. In the current motion, Bartkowski argues that the Amended Complaint "still fails to properly plead facts showing that [he] had any personal involvement in Mr. Young's death, or that any specific policy or practice of Defendant Bartkowski created an excessive risk of harm to Mr. Young or similarly situated inmates." (ECF No. 17-1, Moving Br. at 2; *id.* at 9-13.)

The Court begins its analysis by reviewing the requirements for individual supervisory liability under the Eighth Amendment, as recently clarified by the Third Circuit in *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015). There, the Third Circuit outlined "two general ways" in which a supervisor-defendant may be liable under the Eighth Amendment: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. The Third Circuit explained these two general types of supervisory liability as follows:

> [f]irst, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)). "Failure to" claims – failure to train, failure to discipline,

>or, as in the case here, failure to supervise – are generally
>considered a subcategory of policy or practice liability.

*Id.*

The allegations in the Amended Complaint relate to Defendant Bartkowski's alleged failures to train and/or implement policies/procedures, and thus implicate the first type of supervisory liability.[5] The Third Circuit in *Barkes* reaffirmed its four-part standard, established in *Sample v. Diecks*, for determining whether an official may be held liable on a § 1983 Eighth Amendment claim for implementing deficient policies. *See Barkes* at 317 (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)). Under *Sample*,

>[t]o hold a supervisor liable for such an Eighth Amendment violation, the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure.

*Barkes*, 766 F.3d at 330. As explained in *Barkes*, "[t]he essence of the type of claim [the court] approved in *Sample* is that a state official, by virtue of his or her own deliberate indifference to known deficiencies in a government policy or procedure, has allowed to develop an environment

---

[5] The second type of supervisory liability outlined in *Barkes* is premised on the supervisor's personal participation in the constitutional violations or his or her knowledge and acquiescence in his or her subordinates' violations. 766 F.3d at 316-17. "Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in ... the subordinate's conduct." *Bennett v. Washington*, No. CIV.A. 11-176, 2015 WL 731227, at *11 (E.D. Pa. Feb. 19, 2015) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 76–78 (2007)). There are no allegations in the Amended Complaint that Defendant Bartkowski personally participated in the alleged violations or that he knowingly acquiesced to his subordinates' alleged violations of Mr. Young's rights.

where there is an unreasonable risk that a constitutional injury will occur, and that such an injury does occur." 766 F.3d at 319-20.  Deliberate indifference in the supervisory context may be demonstrated by "(i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff['s] or (ii) by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the two-part test is met." *Beers–Capitol v. Whetzel*, 256 F.3d 120, 136–37 (3d Cir. 2001) (emphasis added) (citing *Sample*, 885 F.2d at 1099).

  Failure to train, discipline, and supervise are assessed under the same deliberate indifference standard as the failure to promulgate adequate policies.  *See Christopher v. Nestlerode*, 240 F. App'x 481, 489 n. 6 (3d Cir. 2007).  To establish deliberate indifference for failure to train, a plaintiff must show that policymakers were on actual or constructive notice that flaws in their training or supervision caused subordinate officials to violate citizens' constitutional rights, and such notice generally requires contemporaneous knowledge of an incident or knowledge of a prior pattern of similar incidents and circumstances. *See id*.  "A single constitutional violation can still provide the basis for municipal liability for failure to train, *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407–09 (1997), but only where 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights' that the policymaker's inaction amounts to deliberate indifference." [6]

---

[6] The Supreme Court set forth the standard for failure to train § 1983 liability in *Canton v. Harris*, 489 U.S. 378, 390 (1989), holding that "the duties assigned to specific officers or employees [or] the need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." An example of a policy that meets this standard would be the failure of a municipality to train police officers to use the firearms they are required to carry.  *Id.* at 390 n. 10.

*Christopher*, 240 Fed. Appx. at 489-90 (citing *Canton*, 489 U.S. at 391); *see also Womack v. Moleins*, CIV. 10-2932, 2015 WL 420161, at *5 (D.N.J. Jan. 30, 2015) (same).

Here, the Amended Complaint alleges that Defendant Bartkowski was responsible for the training and policies related to emergency medical care for prisoners at NJSP. (ECF No. 13, Compl. at ¶¶ 11, 35, 44.) Mr. Young, who relied on a tracheostomy tube to breathe, was transferred from Passaic County Jail to New Jersey State Prison and was housed in the prison infirmary and placed on suicide watch because he had previously tried to remove his tracheostomy tube. (¶¶ 25-30.) The Complaint further alleges that he was able to remove his tracheostomy tube because was not properly monitored by prison staff while on suicide watch. (*Id.* at ¶ 30.) The dislodging of the tracheostomy tube allegedly triggered an unwitnessed cardiac attest. (*Id.*) The Amended Complaint alleges that, although NJSP accepted Mr. Young as a prisoner, prison medical staff "had neither the proper equipment nor training to reinsert a tracheostomy [tube]" and allowed Mr. Young to "languish[ ] for an hour" before EMS arrived. (*Id.* at ¶¶ 30-31, 42.) The Amended Complaint further alleges that Saint Francis Medical Center, the hospital to which Mr. Young was eventually transported, was a mere 1.5 miles away from NJSP. (*Id.* at ¶ 31.)

Drawing all inferences in favor of Plaintiffs, the Court finds that Amended Complaint provides sufficient facts to support at least two alleged deficiencies in training and/or policies/procedures at NJSP, *i.e.*, (1) that prison medical staff did not have the proper equipment and training to reinsert Mr. Young's dislodged tracheostomy tube and (2) that prison staff did not have training or procedures in place to ensure that prisoners with life-threatening medical emergencies received prompt outside medical care. The Complaint also sufficiently alleges that these failures contributed to or caused Mr. Young's death. The Amended Complaint also

sufficiently alleges that Defendant Bartkowski, as Administrator of NJSP, was responsible for supervising medical staff and implementing procedures and training related to emergency medical care.

The central issue, therefore, is whether the Amended Complaint sufficiently alleges that Defendant Bartkowski had actual or constructive notice of the flaws in the training and/or procedures described in the Amended Complaint. Here, as pointed out by Defendant (ECF No. 17-1, Moving Br. at 11-12), Plaintiffs do not allege a pattern of prior similar incidents in the Amended Complaint that would place Defendant Bartkowski on notice of the alleged flaws in the training or policies/procedures. Instead, the Amended Complaint appears to rely on the second method of proving notice, *i.e.*, that there are obvious deficiencies in the training or policies for providing emergency medical care to prisoners, and that these deficiencies are very likely to result in constitutionally deficient medical care. After drawing all inferences in Plaintiffs' favor, the Court finds that the Amended Complaint provides sufficient facts to support the following: (1) that Defendant Bartkowski was responsible for providing training and promulgating policies related to emergency medical care for prisoners at NJSP; (2) that prison medical staff had neither the training nor equipment to reinsert Mr. Young's dislodged tracheostomy tube, which he needed to breathe; and (3) that there was no training or policy in place to ensure that Mr. Young would receive prompt outside medical attention for his life-threatening medical emergency. Indeed, as alleged, the total lack of any preparedness to deal with Mr. Young's medical situation, if proven, would be obvious and so likely to result in constitutionally deficient medical care that the failure to provide the necessary training or

promulgate policies/procedures would amount to deliberate indifference on the part of the policymaker.[7] As such, the Court denies the motion to dismiss without prejudice at this time.

## V. CONCLUSION

Defendant Bartkowski's motion to dismiss the Eighth Amendment and NJCRA claims against him is denied without prejudice at this time for the reasons stated in this Opinion. The Court grants Plaintiffs' request to make the two corrections described in footnote one, *supra*. An appropriate Order follows.

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: April 20, 2016

---

[7] In drawing all inferences in Plaintiffs' favor for purposes of this motion, the Court makes no findings as to whether Plaintiffs will prevail on their claims against Defendant Bartkowski. For example, to the extent that discovery reveals that prison medical staff failed to follow their training or the prison's policies for rendering emergency medical care, Defendant Bartkowski could not be held liable for such failures because *respondeat superior* is not a basis for section 1983 liability. *See Rode*, 845 F.2d at 1207.